### WESTFORD.

State paupers are not ratable polls.

Students at an academy, in a town, where their parents or guardians do not belong, are not ratable polls in such town, if under twenty-one years of age; it seems.

THE election of Jesse Minot, one of the two members returned from the town of Westford, was controverted by Benjamin Osgood and others, on the ground, that the said town did not contain a sufficient number of ratable polls to entitle it to two representatives.[2]

[1] See case of *Harvard*, 1806–7, ante, p. 59.          [2] 33 J. H. 11.

The committee on elections, on the ninth of June, made the following report, which was agreed to,[1] namely :—

"The petition, in this case, is predicated on the want of a sufficient number of ratable polls, in said town, to entitle it to two representatives in the general court.

In this case, the selectmen and assessors of said town, in compliance with an order of the committee, produced a list of all the persons they considered as ratable polls, belonging to said town, on the first Monday of May last, the day of the meeting of the inhabitants of said town, for the choice of one or more representatives to this general court; at which meeting, they did choose two representatives, at separate ballotings, to wit: Thomas Fletcher, Esq., at the first ballot, and Jesse Minot, at the second ballot. It appeared that the list aforesaid contained three hundred and seventy-five names, one state pauper, and eleven young gentlemen, who were, on said first Monday in May, students in Westford academy, situate in said town. It appeared to the committee, in evidence, that the eleven students referred to were all over the age of sixteen, and under the age of twenty-one years, whose parents and guardians all belonged to towns other than the said town of Westford. Upon these facts, the committee are unanimously of opinion, and report:—

That said town of Westford, at the time of said election, did not contain a sufficient number of ratable polls to entitle it to two representatives, and that the supposed election of Jesse Minot, on the first Monday in May, 1812, was utterly void, and of no effect; and that Jesse Minot is not entitled to a seat in this house, and that his seat be declared vacated."

When this report was read in the house of representatives, only one member expressed a doubt, whether the students referred to were improperly put on the list of ratable polls. But as it appeared to be the unanimous opinion of the house, that state paupers are not ratable polls, and as striking off one from the list produced in this case, by the selectmen, would reduce the number so as to avoid the election of the person chosen at the

[1] 33 J. H. 146.

second balloting, the question respecting the students may, perhaps, be said not to have been finally settled.

[The entry on the journal, in relation to the above report, is, that it be "so far accepted, as that the member be not entitled to a seat, and that the residue of the report be recommitted;" but for what purpose is not stated, and cannot readily be conjectured, unless it were, that the committee might examine and express an opinion upon the question, whether the students alluded to were or were not ratable polls. The committee reported a reference to the next session, which was agreed to, and no further action appears to have taken place in relation to the subject.[1]

The question, whether students, at an academy or college, are legal voters in the town where they have a temporary residence for the purposes of education, came before the supreme judicial court, in the case of *Putnam* vs. *Johnson*, in 1813, (10 Mass. Rep. 488,) and was the subject of elaborate discussion, both by the counsel and court. In the opinion of the latter, delivered by Parker, J., it is said, that "a residence at a college or other seminary, for the purpose of instruction, would not confer a right to vote in the town where such an institution exists, if the student had not severed himself from his father's control, but resorted to his house as a home, and continued under his direction and management. But such a residence will give a right to vote to a citizen not under pupilage, notwithstanding it may not be his expectation to remain there forever." See a report of the committee on the judiciary of the house, on this question, in 1842, *post*, page 436, and an opinion of the justices of the supreme judicial court thereon, in 1843, *post*, page 510.]

[1] 33, J. H. 221.